UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL TIEMANN,                )
                                )
            Plaintiff,          )
                                )        Case No. 4:21-cv-00416-JCH
v.                              )
                                )
CITY OF ST. CHARLES,            )
MISSOURI,                       )
                                )
            Defendant.          )
                                )
                                )

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
JUDICIAL REVIEW OF ADMINISTRATIVE DECISION – INJUNCTION AND
DECLARATORY JUDGMENT AND FOR VIOLATIONS OF MISSOURI
WHISTLEBLOWER STATUTE

COMES NOW the Plaintiff Michael Tiemann, by and through his undersigned

counsel, and seeks judicial review of a decision by the City of St. Charles, Missouri,

("St. Charles") terminating his employment from the City of St. Charles, Missouri

Police Department ("Police Department").  In support of his Complaint, Plaintiff

states as follows:

1.      Michael Tiemann was employed as a police services officer by the St.

Charles Police Department from approximately January 28, 2018 through October

28, 2020.

2.      On September 23, 2020 Officer Tiemann was provided notice that he

was under an internal investigation for events occurring on September 16, 2020.

3.     On October 28, 2020, Chief Randall D. McKinley provided written notice that Police Department terminated Officer Tiemann's employment on the basis of conduct which occurred on September 15/16, 2020 (the "Termination Notice") and which was investigated in the Police Department's Office of Professional Responsibility complaint.  A copy of the Termination Notice is attached as Exhibit 1.

4.     The termination was made on the basis of conduct which allegedly began on September 15, 2020 and continued into September 16, 2020, which was investigated by the Police Department and documented via a letter to Officer Tiemann dated October 16, 2020 (the "Pre-Disciplinary Notice").  A copy of the Pre-Disciplinary Notice is attached as Exhibit 2 and incorporated by reference.

5.     On September 15 and 16, Officer Tiemann was not the on-duty supervisor of the jail.

6.     The investigation arose from the arrest of Joshua Landherr by unknown St. Charles police officers on September 15, 2020.  Following his arrest, Mr. Landherr became "aggressive and destructive while attempting to damage City property." Exhibit 2 at page 1.

7.     Unknown St. Charles police officers or employees, including the on-duty supervisor of the jail, had been informed by a third party that Mr. Landherr may have been under the influence of an illicit substance.  Exhibit 2 at page 1.

8.     Despite Mr. Landherr's behavior and the fact that Mr. Landherr may have ingested an unknown illicit substance, the on-duty jail supervisor determined that Mr. Landherr was fit for confinement.

Case: 4:21-cv-00416-JCH   Doc. #:  8   Filed: 04/09/21   Page: 3 of 11 PageID #: 57


9.      The on-duty jail supervisor instructed jail employees to monitor Mr. Landherr's behavior and to notify the on-duty jail supervisor if Mr. Landherr's behavior "were to change" again, with no further direction as to what to look for or to observe.  Exhibit 2 at page 1.

10.     When Officer Tiemann began his shift at 2230 hours on September 15, 2020, Mr. Landherr had already been in custody of the City Jail for approximately 3 hours and 40 minutes.

11.     Upon arrival, Officer Tiemann was told by another Police Department employee that Mr. Landherr was aggressive, destructive, and may have ingested an illicit substance.   Officer Tiemann was then instructed to safely monitor Mr. Landherr and notify the on-duty supervisor if Mr. Landherr's behavior changed.

12.     Officer Tiemann was not instructed on what "changes" he needed to observe before notifying the on-duty supervisor of a "change" in Mr. Landherr's behavior or the time frame in which to contact the on-duty supervisor.  In fact, the on-duty supervisor had not given Officer Tiemann any verbal or written directive and Officer Tiemann had to obtain the limited information he had on monitoring Mr. Landherr from another Police Department employee.

13.     Officer Tiemann had never received any medical or behavioral training from the Police Department which would have given him an objective standard for when he should report any observed change in Mr. Landherr's behavior.

14. Officer Tiemann followed what he had been told and safely monitored Mr. Landherr the entire time Mr. Landherr was in custody, up to and including the time he notified the on-duty jail supervisor of a change in Mr. Landherr's condition.

15. Officer Tiemann observed that over the course of Mr. Landherr's confinement his behavior was calm, but subjectively this did not immediately alarm Officer Tiemann and cause him to notify his on-duty supervisor.

16. At 0219 hours on September 16, 2020, when Landherr's condition changed based on Tiemann's subjective determination, the on-duty supervisor was informed that there had been a change in Landherr's condition.

17. After the on-duty supervisor was notified of changes in Mr. Landherr's behavior, EMS was called and asked to respond to the Police Department.

18. Officer Tiemann had not received any medical training and was not trained in how to use any emergency medical equipment, thus Officer Tiemann could only wait for EMS to arrive and continue to monitor Mr. Landherr's condition.

19. At 0228 hours, EMS responded to the Police Department and began performing life saving measures on Mr. Landherr.

20. Mr. Landherr died over two hours after he left the Police Department.

21. The Pre-Disciplinary Notice alleged four charges against Officer Tiemann as the grounds for terminating his employment.

22. The first charge raised against Officer Tiemann was that Mr. Landherr was not fit for confinement and should not have been confined in the Jail per Police Department policies ("Policies") Section 900.3.1(b) and (g). Exhibit 2.

4

23.     The first charge is entirely without merit as the Pre-Disciplinary Notice shows that Mr. Landherr had already been assessed as fit for confinement by an on-duty jail supervisor prior to being placed in confinement and the only instructions that had been given were those given by a fellow employee that Officer Tiemann should safely monitor Mr. Landherr and report any changes to the on-duty supervisor.  Officer Tiemann complied with the Policies, including those related to confinement, and there are no facts to support the first charge.  Officer Tiemann was not on duty nor present at the time of Mr. Landherr's assessment as fit for confinement nor at the time of Landherr's initial confinement.

24.     Similarly, the third charge alleges a violation of the Police Department Code of Conduct, Section XIII, Subsection B regarding persons in custody.  Exhibit 2. Specifically, this section states that:

> *Any member becoming aware of any condition affecting the rights of a person, including the need for medical attention of a person in custody, or any abuse or unnecessary force inflicted by any fellow member or members, shall immediately make a full disclosure of such condition or event to the appropriate superior, and take such other action to protect the person in custody as the circumstances may require*

25.     The facts do not support any alleged violation of the Code of Conduct as by the time Officer Tiemann arrived at work, Mr. Landherr had already been in custody for over three hours and had already been deemed fit for confinement by an on-duty supervisor.  Officer Tiemann safely monitored Mr. Landherr as he was told to do and his diligent action gave medical personnel over two hours to attempt to save Mr. Landherr's life.  The third charge simply has no support.

5

26.     Finally, the second and fourth charges both allege conduct unbecoming.

27.     For the second charge, Section X of the Police Department Code of Conduct defines conduct unbecoming as "conduct which brings the department into disrepute, or reflects discredit upon the person as a member of the department, or which impairs the operation or efficiency of the department or the member."

28.     For the fourth charge, the St. Charles employee manual rule 12.5 does not define conduct unbecoming.

29.     Officer Tiemann was ordered to observe Mr. Landherr, which Officer Tiemann did throughout his entire shift, and to report any change in Mr. Landherr's condition, which Officer Tiemann did after he subjectively determined a change in condition.  There are no allegations made or fact provided that Officer Tiemann ever failed to comply with that order or any other order or policy.

30.     Officer Tiemann was able to safely monitor Mr. Landherr and Officer Tiemann's diligence gave medical personnel three hours to attempt to save Mr. Landherr's life.  Simply put, Officer Tiemann's conduct was in no way unbecoming under either the Police Department Code of Conduct or under the St. Charles employee manual.

31.     Chief McKinley, following the pre-disciplinary hearing, determined that Officer Tiemann should be terminated and informed Officer Tiemann of its decision via the Termination Notice.  Exhibit 1.

32.     The Termination Notice did not state the basis upon which Mr. Tiemann was being terminated and which, if any, of the alleged charges Mr. Tiemann was found to have violated following the hearing. Exhibit 1.

33.     Officer Tiemann thereafter submitted a timely appeal of his termination to the Mayor of St. Charles (the "Appeal") pursuant to §13.2 of the Employee Personnel Manual of St. Charles. A copy of the Appeal is attached as Exhibit 3 and incorporated by reference.

34.     In his Appeal, Officer Tiemann contended that his termination was arbitrary, capricious, truly irrational, and not supported by substantial and competent evidence as the facts set forth in the Pre-Disciplinary Notice prove that Officer Tiemann did what he was supposed to do at all times alleged.

35.     In his Appeal, Officer Tiemann requested an in-person contested hearing on this matter including the right to cross examine witnesses and to compel attendance of witnesses.

36.     Officer Tiemann did not get his requested in-person hearing, nor any hearing, and instead received a letter from the Mayor of St. Charles which summarily stated that the Mayor was upholding the termination of Officer Tiemann's employment (the "Appeal Decision").  A copy of the Appeal Decision is attached as Exhibit 4 and incorporated by reference.

37.     The Mayor of St. Charles, Daniel J. Borgmeyer, did not make any Findings of Fact or Conclusions of Law but sustained Officer Tiemann's termination.

38.     Plaintiff has exhausted all administrative remedies available to him by law.

39.     The decision by St. Charles is unsupported by – and is in fact in direct contradiction to – the competent and substantial evidence; is unauthorized by law; is arbitrary, capricious and unreasonable; and involves an abuse of discretion.

40.     The uncontroverted evidence established that: (i) Mr. Landherr was deemed fit for confinement by the on-duty supervisor and was confined for several hours before Officer Tiemann arrived at work; (ii) Officer Tiemann carried out his order to safely observe and report on Landherr's condition following a change in behavior; (iii) Officer Tiemann did not engage in any conduct unbecoming and (iv) Officer Tiemann did not violate any of the charges alleged in the Pre-Disciplinary Notice.

## Count I for Judicial Review

41.     Paragraphs 1 through 40 of this First Amended Complaint are incorporated by reference herein as if fully set forth herein

42.     This Court has jurisdiction to hear this case pursuant to RSMo section 536.150.

43.     Venue is proper in this Court as all actions given rise to these claims occurred in St. Charles County, Missouri.

44.     There have never been any Findings of Fact by either the Police Department or by the Mayor of St. Charles nor any Conclusions of Law.

45.     The Termination Notice and Appeal Decision constitute a final determination terminating Officer Tiemann's employment without any support or justification.

46.     Plaintiff is entitled to a permanent injunction barring Defendant from enforcing his termination. Absent injunctive relief, Plaintiff has suffered and will suffer irreparable harm, and does not have an adequate remedy at law.

47.     Plaintiff is entitled to a declaratory judgment declaring that Defendant's actions are unsupported by competent and substantial evidence; unauthorized by law; arbitrary, capricious and/or unreasonable; and involve an abuse of discretion. Plaintiff has a legally-protected interest in continued employment absent cause for termination; there is a real, substantial and presently-existing dispute which is a justiciable controversy; Plaintiff has no adequate remedy at law; and the issue is ripe for judicial determination.

48.     Upon the Court's finding that Plaintiff's termination was unlawful, Plaintiff is entitled to reinstatement to his previous position; to compensate him for all back-pay due and owing, plus nine percent interest per annum; and fully vest him in his retirement/pension plan.

WHEREFORE Plaintiff Michael Tiemann requests a permanent injunction, a declaratory judgment, and an order in mandamus reversing the decision of the City of St. Charles and reinstating him with all back-pay due and owing him; and for such other relief as the Court deems just and appropriate; and for the Court to take such further action as it may be proper.

## Count II – Missouri Whistleblower Statute, RSMo 105.055

49.     Paragraphs 1 through 48 of this First Amended Complaint are incorporated by reference herein as if fully set forth herein.

50.     Plaintiff was a public employee employed as a police officer by St. Charles.

51.     Officer Tiemann reported or was about to report the on-duty supervisor's and/or Police Department's prohibited activity, specifically the mismanagement, violation of policy, and/or danger to public safety resulting from the on-duty supervisor and/or Police Department's handling of the events occurring on September 15/16, 2020.

52.     St. Charles took disciplinary action against Officer Tiemann because Officer Tiemann disclosed or was about to disclose information which Officer Tiemann reasonably believed constituted mismanagement, a violation of policy, and/or danger to public safety following the incident on September 15/16, 2020, including the absence of any medical training or training for the use of life saving equipment for jail employees such as Officer Tiemann.

53.     St. Charles unlawful termination of Officer Tiemann has directly injured Officer Tiemann.

54.     Officer Tiemann has suffered actual damages resulting from his unlawful termination by St. Charles including but not limited to lost wages, the loss of his employment, the loss of retirement and other benefits, and reasonable attorney fees paid to his attorney.

WHEREFORE Plaintiff Michael Tiemann requests all lost wages from the date of termination to the date of reinstatement, the restoration of his retirement and other benefits, and for his reasonable attorney fees; and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

**THE GRAVILLE LAW FIRM, LLC**

By:  /s/ Nathan K. Bruns
      Nathan K. Bruns, #71812MO
      130 S. Bemiston, Suite 700
      Clayton, MO 63105
      636.778.9810 - telephone
      636.778.9812 - facsimile
      nkb@gravillelaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of April, 2021, a true and correct copy of the foregoing was electronically filed and served via the Court's electronic filing system upon all attorneys of record.

/s/ Nathan K. Bruns